[No. 30102. Department One. April 8, 1947.]

LORRAINE BATCHELDER MUNROE, *Appellant*, v. ALEXANDER DANIEL MUNROE *et al.*, *Respondents.*[1]

*Ewing D. Colvin* and *Colvin & Williams*, for appellant.

*Little, Burgunder & Smith*, for respondent Alexander Daniel Munroe.

SCHWELLENBACH, J.—This is a divorce case. The additional defendants were made parties in order that they might be subjected to the jurisdiction of the court for the purpose of determining what rights or obligations they

[1] Reported in 178 P. (2d) 983.

had in certain property claimed by the members of the marital community involved in this action.

Mr. and Mrs. Munroe were married April 14, 1938, at Arlington, Washington. She was slightly older than he. At that time, she was a widow with two children, and was employed as a telephone operator at Anacortes. Munroe had never been married before, and was working as a night policeman at Anacortes. Mrs. Monroe owned an equity in a home which she was purchasing, and he had some shares in a plywood company.

In April, 1942, they went to Seattle, and Munroe found employment in the shipyards. Then they leased a hotel or rooming house in the "skid road" district from a Japanese owner, and contracted to purchase the furniture and equipment under a conditional sales contract. He did the janitor and repair work, and she worked as chambermaid, also doing the washing and ironing for the hotel. They prospered and contracted to buy another. Soon they had three such hotels, and, for a while, they owned a grocery store in that vicinity. The hotels were the Neilbur at 510 Jefferson street; the Panama at 605½ Main street; and the Yakima at 811 Maynard avenue. Later, they contracted to purchase the Sunset hotel in the Ballard area, at 5400½ Twenty-second avenue N.W. As their holdings grew, it became necessary for them to employ additional help.

In August, 1943, a lady drove out from Connecticut to see her husband, who was in the navy. She missed him, for he had sailed before her arrival. She stayed at the Panama hotel until her funds grew short. She then made application to Mr. Munroe for employment. He hired her as a clerk at the Panama. Munroe later became intimate with her, and, as a result of this intimacy, she gave birth to a child. After her husband admitted parentage of the child, Mrs. Monroe had divorce papers prepared, but did not go through with the action because Mr. Munroe promised to leave this woman alone. Mr. Munroe did not keep his promise, but continued his illicit relations with his paramour. As a consequence, she gave birth to another child.

While this relationship was going on, Mr. Munroe used community funds for the down payment on a home at 9057 Loyal avenue, where he established this woman and her children. The purchase was being made in the name of his brother, and Mrs. Munroe was prevailed upon to give the brother a quitclaim deed to the property. Because of these various happenings, this divorce action resulted.

The only question before us is the disposition of the property. At the trial, the appellant was represented by an associate of the attorneys now representing her in this appeal. During the trial, there was considerable wrangling between counsel. The husband had handled all of the business transactions for the community and had kept charge of all records, such as they were. He testified, mostly from memory, concerning the receipts and disbursements of the various properties. One source of information during the trial was a petition he had made to the OPA for an increase in rents to be charged at one of the hotels. He was told to bring his books to court. The only record introduced was a long adding machine tape with figures on it, which he testified he took from his books. However, the record does show that, at one time, the judge looked through some books which had been brought into court but not admitted in evidence. As to the Yakima hotel, he testified that his monthly receipts were eleven hundred dollars and his expenses sixteen hundred dollars.

The trial commenced March 28, 1946. On March 29th, a recess was taken until April 8th in order to give counsel an opportunity to have the records examined. They next convened May 31st. At the close of that hearing, as the court was about to render its decision, a recess was taken, after which a stipulation was entered into in open court between counsel. It was stipulated that the Sunset hotel would be awarded to the plaintiff, subject to a lien in favor of the defendant in the sum of thirteen thousand five hundred dollars, payable at two hundred dollars a month, the unpaid balance to bear interest at four per cent, the defendant to have a lease on the market in the lower floor

of the hotel building for ten years at a monthly rental of one hundred fifty dollars, the plaintiff to be allowed fifteen hundred dollars as attorney's fees. The sum of $2,468.05 was to be placed in escrow for the purpose of paying an OPA obligation which the defendant had incurred, with the understanding that, if all of this sum were not needed, the balance would go to the plaintiff, and if more were needed, she would have to pay it. All of the other assets of the community were to go to the defendant, he to assume all outstanding obligations.

The parties next appeared in court on June 8, 1946, Colonel Colvin appearing for the plaintiff, his associate counsel having retired from the case. The case was then reopened for additional testimony, at the close of which the court made and entered its findings, conclusions, and interlocutory decree. The court found the following values belonging to the parties:

| | |
|---|---:|
| House and lot in Anacortes | $3,000.00 |
| Equity in residence at 9057 Loyal Avenue | 3,300.00 |
| Equity in Sunset Hotel (Total value $42,250.00, subject to contract balance due of $10,600.00) | 31,650.00 |
| Interest in Yakima Hotel | 500.00 |
| Interest in Neilbur Hotel | 850.00 |
| Equipment in Superior Market located on lower floor of Sunset Hotel | 1,750.00 |
| Checking account, Seattle First National Bank | 600.00 |
| Checking account, National Bank of Commerce | 800.00 |
| Checking account, First National Bank, Ballard | 600.00 |
| Trust account, Seattle First National Bank | 1,000.00 |
| Balance due on sale of veneer company stock | 1,200.00 |
| 1942 Packard | 2,000.00 |
| 1940 DeSoto | 950.00 |
| 1938 Mack Truck | 500.00 |
| 1938 paint truck | 150.00 |
| Furniture at Anacortes home | 500.00 |
| Accounts receivable | 4,000.00 |
| Total | $53,350.00 |

Also the following liabilities:

| | |
|---|---:|
| Note held by National Bank of Commerce | $2,300.00 |
| Note held by Seattle First National | 2,000.00 |
| Current miscellaneous bills | 3,000.00 |
| O.P.A. suit for $8,000.00, to be settled for $2,468.05 | 2,468.05 |
| Total | $9,768.05 |
| Net Worth | $43,581.95 |

The decree granted a divorce to the plaintiff and awarded her the equity in the Sunset hotel, subject to a balance remaining due on the purchase price in the amount of ten thousand six hundred dollars; and subject to a lien in favor of the defendant in the sum of ten thousand dollars, to be paid at the rate of two hundred dollars per month, with interest on deferred payments at four per cent per annum. The decree further provided that the plaintiff should lease the ground floor of the Sunset hotel to the defendant for a term of ten years at a monthly rental of two hundred seventy dollars. All of the remainder of the property was awarded to the defendant, he to pay the obligations listed above. No attorneys' fees were allowed, the decree providing that each party should pay his own costs.

■ Appellant points out claimed errors in the valuations of almost all items as found by the trial court. We have diligently gone over the entire record, including the exhibits admitted in the case, and would not attempt, because of the unsatisfactory condition of the record, to undertake a valuation of the properties. The record was made by the parties themselves, and they are bound by it. We feel that the trial judge should be commended for his fairness, patience, and perseverance in endeavoring to ascertain the true facts. He even made a personal inspection of the Sunset property prior to the final hearing. His valuations are as fair as it was humanly possible to determine.

■ However, we do feel that the decree should be modified. It is clear that the trial court attempted to make an even division of the property. Their holdings were all obtained through the joint efforts of the parties. One contributed as much to their acquisition as the other. But, at this time, the parties are not on the same plane. The testimony shows that the wife is old and sick. She is afflicted with diabetes. It is necessary for her to continually diet and take insulin. Her future earning capacity is greatly impaired. On the other hand, the husband is young, strong, virile. He will have no difficulty earning a good income for a number of years. We feel that the decree should be modified to reduce the lien in favor of respondent on the

Sunset hotel, from ten thousand dollars to seven thousand five hundred dollars; that the appellant should be awarded the equipment located in the Superior Market; that appellant should not be required to lease the ground floor of this property to the respondent; and that respondent should be required to pay the costs of the action, including an attorney's fee of seven hundred fifty dollars.

■■ Respondent contends that the stipulation entered into during the trial was binding on the court; that it became an agreement for the final disposition of the property rights between the parties, and that the trial court was bound to carry it into effect unless and until it was made clear to it that the stipulation was improper and unconscionable. Respondent relies upon *State ex rel. Gould v. Superior Court,* 151 Wash. 413, 276 Pac. 98. It is true that a stipulation entered into between the parties in an ordinary law suit is binding upon the trial court. However, this was a divorce action, and a stipulation entered into between the parties could have no more effect than that of a property settlement, which is never binding upon the court, but which may be either approved, modified, or entirely disregarded.

The interlocutory order will be modified in the respects and manner indicated.

MALLERY, C. J., MILLARD, SIMPSON, and ABEL, JJ., concur.